The next case on our call this morning is Agenda No. 7, Case No. 105-368, People of the State of Illinois v. Juan C. Hernandez. Mr. Ackerman, ready to proceed? Thank you. To please the Court, Chief Justice Thomas, members of the Court, my worthy opponent, I'm Alan Ackerman. I have the privilege of representing the petitioner. Forty years ago this month was the first time I had the opportunity to argue before this Court. It was also a post-conviction case. Having said that, the dynamics of this case demands some, somewhat, something beyond, let's pretend, because what happened here offends the notion of justice. It offends the public perception of what a court and it offends the circuit court and every circuit court judge who hears a criminal case and perhaps, for that matter, a civil case. The facts are pristine. They are not denied, subject to de novo review. And what we have, very simply, is the defendant's attorney representing the murder solicitation victim. There is no question that the prosecutor knew. There is no question that the defense attorney, with an S, knew. There was more than one. There is no question that the circuit court was never told. And there is no question that the defendant was never told. In light of that, the lower court declined to grant PC relief. The divided appellate court affirmed. And the court has now the question before it, or the questions before it. Does the integrity of the judicial process, the criminal justice system, demand something more than was accommodated to the defendant in this case? The answer is clearly yes. The system demands it and the public demands it. Because if there is no integrity in the system, the system will crumble of its own weight. What we have here in the dynamics of this, whether they be repeated again, I don't know. But I do know that this was in no danger of getting a good conduct medal, I'll tell you that frankly. But as a citizen, he was entitled to what the law permits. And that is due process of law and the right to effective assistance of counsel. Now, the state, for its part, before this court, suggests that whatever has been ongoing for the last 40 odd years before this court in the area of conflict of interest is not workable, can't exist anymore. And as a result of that, they suggest, perhaps respectfully, perhaps tongue in cheek, I don't know, that you adopt Mickens versus Taylor, a five to four decision where the question before the judge, because in Mickens, the same trial judge appointed the conflicting lawyer for the victim and defendant. But the lawyer did not reveal it at all. And the prosecutor did not reveal it at all. But the judge had appointed the same lawyer for both. So the judge knew or reasonably should have known. And that was the question in Mickens. In a narrow five to four decision, Justice Scalia, in a rather narrow opinion, took the case for the question presented, but went well beyond that and decided for the majority that, you know, there was no adverse impact because of the conflict. And therefore, there is no relief to be granted. The four dissenting justices took a great deal of issue with everything Justice Scalia said. And I quote extensively from Justice Stevens. And he wrote with the benefit of, I believe it's an 1840 United States Supreme Court decision, that to conceal from your own client the background of your interaction with other clients is itself a deception that can never be condoned. And then Justice Breyer, recollection serves me right, said that the federal system, the very Sixth Amendment system that the state urges that you adopt, is unworkable, unmanageable under the Sixth Amendment. So number one, the state's suggestion, and again I don't know if it's serious, but if it is, that's fine. It must be rejected. This court has the wherewithal and in fact the duty to permit Illinois citizens to have the benefit of the right to counsel and due process as it sees fit under our Constitution. Now, the state says, you know, there was no duty to disclose by the prosecutor or the defense lawyer or lawyers, because even though there was a potential conflict, whatever that means now, and even though they agree, defense counsel had contemporaneous clients, victim-defendant, there was no per se, there was no actual, maybe there was a potential, maybe, because after all, the victim didn't testify because they claimed he was a fugitive out of the country, you know, too, and he clearly was gone at the time of this trial, or at least not available as near as anybody knows. Now, let's examine that just for a moment, as near as anybody knows. Defense counsel simply indicated that he thought the defendant had gone to Mexico, Mr. Cepeda. Well, I don't know that that's proof that anybody's in Mexico, but I don't know, and I don't know that anybody made a real effort to find Mr. Cepeda. I have no idea. The record is barren, it's sparse, so I can't say. But what I can say is that nobody told the judge, and so the judge had no opportunity to look down at Mr. Hernandez, now serving 20 years, real time, and say, Mr. Hernandez, you know, there's some problems here you should know about, perhaps something similar to a 402, at no issue. And what you ought to know is your lawyer represented Mr. Cepeda, the same person that you're accused of soliciting the murder of. Now, did you know that? No, I didn't. Well, I want you to know that, and by the way, maybe it's a good idea here that you talk to another lawyer, maybe an assistant public defender, maybe somebody on the point, because you're entitled to somebody, and this is an ABA or a model rule standard, you're entitled to the advice of a lawyer who has nothing to gain or lose by listening and advising. But none of that happened here, as we know. Why didn't it happen? Because the system failed, and the system failed because the attorneys who are the first line of integrity, the attorneys who the justices and judges must depend on, must rely on, opted to remain silent. And if the court pleases, the public is offended, the criminal justice is offended, the public interest is undermined, and Mr. Hernandez, who I repeat, is in no danger of getting a good conduct medal, should be granted a new trial. And I thank you. Mr. Ackerman, in this case, and I'm not sure that it makes a difference, but in this case, the attorney for Mr. Hernandez, appointed or retained? Retained. And there is in the record a lengthy argument at the close of the proceedings where initial counsel who had no conflict and the conflicting lawyer had a double of an argument regarding some very significant bond proceeds that went to defense counsel. And had he been retained counsel and appointed by the same judge, then you would say that I would say Mickens does not apply under any circumstances because this court's standards as they stand for the last 40 years, starting with Stovall and Spreitzer and so forth, are perfectly workable. Thank you. Mr. Ackerman, just so that I'm sure that you have a chance to address it, the argument will be that this, I would think, and I apologize to the state if I get it wrong. No help. It's very frank, gentlemen. I know that. But at least in the briefs part of the argument is that though defense counsel still represented the named victim, he did so only because he had no chance to withdraw because the victim had bond forfeited. Wherever he was, you're correct, the record is of no value. And that two years had gone by since that time and that this, whether or not the per se rule applies here, and this per se rule should not apply to cases in which there's that break in time between the time that the defense attorney last had contact with the witness. Given the defense attorney, the benefit of any doubt whatsoever that he's candid and so far has hadn't heard from him for two years or some such thing, I believe they rely on Illinois Supreme Court Rule 13, which seemingly demands that the client be notified if you're seeking circuit court permission to withdraw. And I suppose that is the rule. The record in this case fails to suggest for even a moment that defense counsel made any effort at all to go before the chief judge, to go before the trial judge, I said trial judge, the judge to whom Mr. Cepeda's case was assigned, with a motion seeking permission to withdraw and now that judge may have turned around and said, well, under all the circumstances, sure, you're permitted to withdraw. Or perhaps he would have said, no, you're not. But the fact is he did nothing. And therefore the state should not be in a position to turn around and say, we know that he didn't disclose his confidences that he received from Mr. Cepeda, but after all, he had to remain his technical client. That doesn't wash respectfully. Okay. Thank you. Thank you, Mr. Ackerman and Mr. Nowak. May it please the court. My name is John Nowak. I'm an assistant state attorney from Cook County and I represent the people of the state of Illinois in this case. Your honors, this court Illinois' unique per se conflict of interest rule once and for all. It's unworkable. No other jurisdiction in the country uses such a rule. All other jurisdictions, including the United States Supreme Court, and there is no dispute with the United States Supreme Court, decide conflict of interest by looking to see if there was an actual conflict. That is whether there's an actual adverse effect on counsel's performance. That actual conflict of interest standard should apply here in Illinois to all conflicts issues, and this case is a perfect example of why. This court has already found the per se rule to be unworkable in three areas already. This court has already found the per se rule to be inapplicable when there are conflict issues regarding the multiple representation of co-defendants. In such a case, this court has expressly held the per se rule does not apply. Also, this court has held expressly the per se rule does not apply when a defendant is represented by one assistant public defender, and that assistant public defender is required to make an ineffective assistance of counsel claim against a previous assistant public defender who had represented that defendant in that same case. This court has also held the per se rule to be unworkable and inapplicable in cases involving that don't involve ineffective assistance of counsel. In all three of these areas, this court has already held the per se rule to be unworkable and instead applies only the actual conflict of interest standard. That is, this court in those situations looks only to determine whether there was an actual adverse effect on counsel's performance. A single standard should apply to all conflicts issues here in Illinois. Mr. Nowak, the per se rule has been in effect in this court since 1988, right? Yes, Your Honor. Yes, it has. So this court has been well aware that the U.S. Supreme Court and other jurisdictions have not employed it. Your Honor, the last time this court addressed whether it should adopt the actual conflict of interest standard was in 1988. It had dated back since as far as 1968, before the U.S. Supreme Court had spoken on this issue. In 1988, I believe it was in People v. Washington, this court decided to adhere to the per se rule based on an overly narrow reading of Coiler v. Sullivan. That was from 1980. Coiler v. Sullivan first established the actual conflict of interest rule, holding that under the Sixth Amendment, conflicts of interest will be reversed and amount to ineffective assistance of counsel only if there's an adverse impact. That case, the Coiler v. Sullivan case, had to do with multiple representation of co-defendants. This court in 1988 read the Coiler case so narrowly and upheld that it applied only to multiple representation of co-defendants. This court believed that it didn't apply to other issues. And therefore, in Washington, in 1988, this court said, well, we already apply that actual conflict of interest rule to multiple represent co-defendants. The Supreme Court doesn't do anything differently. But as we explained in our brief, that was an overly and incorrectly narrow reading of the Coiler v. Sullivan case. Since that Coiler case in the U.S. Supreme Court, Supreme Court's made it clear that this actual conflict of interest standard does not apply just to multiple representation of co-defendants, which is what this court believed in 1988. I have a two-part question for you. You're arguing that we change our jurisprudence, which is perfectly proper. My question is this. Should the lawyers in this case, first the defense lawyer and possibly the prosecutor as well, have advised the judge regardless of which rule we had? Ideally, Your Honor, defense counsel would have alerted the court to this before trial. The prosecutor in his defense did not learn of it until... Certainly given the circumstance, there was a possibility of actual prejudice, wasn't there? There was a possibility, Your Honor. And while if this had been brought up before trial, the court would have been able to address whether that possible conflict would have had any effect. But what we have here, Your Honor, is the fact that this went through the trial. And the U.S. Supreme Court has made clear the Sixth Amendment doesn't protect against mere theoretical possibilities of conflicts. And here we know, because the trial concluded, that there absolutely was no adverse effect. The defense lawyer certainly had significant contact with the victim of the crime in which he was now the defense lawyer. Isn't that correct? Years earlier, Your Honor. But it was the time that the crime was going on. It was in that general area. Yes, that's right, Your Honor. And it's true that the, by the way, we talk of hypotheticals, that the defense lawyer announced that if the victim was to reappear, he would be duty-bound to defend him or to represent him. Isn't that correct? That was what Mr. DeLeon testified to. That's correct, Your Honor. He gave an affidavit to that effect. Isn't that right? He did. Although the accuracy of his affidavit is certainly in dispute, because in his affidavit he says that he actively was representing Mr. Cepeda at that time. He backed away from that at the evidentiary hearing and said he was not actively representing. But it was in the affidavit. Yes, Your Honor. I'm sorry. But my point is, as to the admonishment issue, advising the judge of what the circumstances were, and that's the main part of Mr. Ackerman's argument, it doesn't make any difference whether you're dealing with the per se rule or a prejudice rule, does it? No, it doesn't, Your Honor. In fact, the U.S. Supreme Court, as part of its conflict of interest analysis, the first part of that is that if it is brought to the trial court's attention, the trial court should analyze it before trial as to whether there are any possible conflicts. The actual conflict of interest rule comes into effect when the conflict issue is raised after trial. And that's what we have here, Your Honors. And here, again, as far as the per se rule goes, this Court has found that as far as per se categories that possibly could relate to this case is whether there's contemporaneous relationship with the victim or contemporaneous representation of a state witness. Here, Your Honors, there was no contemporaneous relationship with the victim. This relationship had effectively ended years earlier. Mr. DeLeon had not spoken to Mr. Cepeda in over three years by the time this trial began. Not a word, not a letter, nothing. Had heard nothing from him. That can hardly be called a contemporaneous relationship at the time this trial began. That's how it would... Did the state know that in advance of trial? Your Honor, according to the record, the state was not aware of it until the middle of trial. Mr. DeLeon, according to his testimony, informed the prosecutor of this during the middle of trial during a break. So what would happen if the state felt it necessary to call Cepeda? There, Your Honors, we would have an entirely different case because the contemporaneous nature of the representation of Mr. Cepeda would then, if he's back in town, he's back in the jurisdiction, then we're talking about a possibility that this is contemporaneous representation, that is, representation of an actual state witness. This Court held moralis that the per se rule only applies to those witnesses that actually testify, not to those that are just potential. If he'd actually appear, it would be an entirely different case, Your Honor. Here, he didn't appear. Is one of the reasons for the per se rule that when you're in this situation, it's just fraught with such danger it ought to be addressed? That's the rationale, Your Honors. I mean, that's the rationale. It's a pretty solid rationale, isn't it? It is, Your Honor, but it's also protected by the actual conflict of interest standard. The reason why the per se rule should be abandoned is simply because of these types of fine lines that have to be drawn in cases like this. A case like this where there's absolutely no dispute whatsoever that there was any actual effect on counsel's performance, not once has the defendant argued that his counsel's performance was adversely affected, not in his trial post-conviction petition, not before the appellate court, and not before this court. There was absolutely no dispute, Your Honors, that there was no adverse effect. The fact here that we're reduced to drawing these fine lines to decide whether there was a per se rule or not goes against the heart of the Sixth Amendment. The Sixth Amendment, as the U.S. Supreme Court has made clear, doesn't protect against mere theoretical possibilities but only those that actually occurred. And here, yes, the per se rule protects against these potential conflicts, but here the trial is over. And the fact that there's no dispute over any actual adverse effect just shows why the per se rule is inapplicable. If we're going back. Yes. How could counsel even separate himself from the alleged victim, Mr. Cepeda? I mean, the whole trial strategy, all he does with regard to the trial, is based on what he has knowledge of. And how does he separate that, having two clients at the same time? Your Honor, Mr. De Loon made clear in his testimony at the evidentiary hearing that he did not rely on any sort of confidences or any sort of information he learned from Mr. Cepeda. We can learn whether, again, the actual conflict of interest standard goes to whether there's an actual adverse effect. There was absolutely no adverse effect here, given that prior relationship. Again, defendant doesn't dispute that. He effectively concedes it by not arguing it. And here, Your Honors, Mr. De Loon provided an overwhelmingly effective defense for the defendant, including putting on several witnesses to corroborate defendant's story that he was in fear of Mr. Cepeda. Here, Your Honors, again, while the per se rule does not apply, the fact that these such fine lines and fine distinctions have to be made in a case where it is admitted that there's no adverse effect on defense counsel's performance, in effect admitting that there's no Sixth Amendment violation, just goes to the point to show why the per se rule should be abandoned once and for all, not just to these three areas where this Court has already abandoned it, but to all situations, and adhere to what the rest of the country does and what the U.S. Supreme Court does and apply the actual conflict of interest standard. Here's the problem I have, and I'd like to hear your response to it. You know, I can understand in this circumstance why defense counsel might not tell the judge. Because, number one, he's got a paying client. Number two, it's built in reversible error if it goes south, if Cepeda testifies. So maybe he should have said it. I can understand why he wouldn't say it. Why wouldn't the state bring this up to the judge when they gained that knowledge and head off all of these potential problems? Because if it had been addressed at the time that this information came forward, the judge either could have gotten some kind of a waiver from the defendant that he wanted this guy anyway and to go ahead, could have had all this information. It seems to me if you adopt the actual conflict, what you're encouraging is exactly what happened in this case and flying blind until you've gone all the way through the trial, all the way through all the proceedings, and then you're guessing. I mean, then you're going back and taking a retrospective look. Tell me why my concerns are misplaced. Your Honor, while it may have been advisable, certainly, for the prosecutor or defense counsel to raise this, certainly the prosecutor, when he learned of it mid-trial, there's no reason for concern here. We know what would have happened if this had been brought to the trial court's knowledge. The trial court held, after the evidence you're hearing, that there was no per se conflict and that there was no actual conflict. We know. We don't need to speculate what the trial court would have decided, what the trial court would have done. The result would have been unchanged. There's certainly an argument that there was a per se conflict. I don't mean to take your argument away from you, but I would suspect that Mr. Ackerman would stand next to you and say there certainly was a per se argument. You were trying a case in which the defense lawyer had on file an appearance for the victim in the case in another courtroom. Technically, he was still counsel of record for Mr. Cepeda. That goes to whether there was a contemporaneous representation of a witness. There was no way he was not an actual witness. The other part of the per se rule... He was on the... He certainly... He may not have been called, but he certainly was an actual witness in this case. He was on the witness list, and he was the victim of the crime. Your Honors, in Morales, this Court held that the per se rule applies only to those that actually testify, that are actual witnesses at trial. Here, we don't have that. And as for the second category of per se conflicts, that is to whether there's a contemporaneous relationship with the victim, certainly there was no contemporaneous relationship. Even though he's still listed technically as counsel of record, he hadn't had any relationship with Mr. Cepeda in over three years by the time this trial started. It doesn't fall into either one of these categories. But again, Your Honors, there's no dispute here. There was no actual adverse effect. The fact, again, that we have to make these fine distinctions when there's no dispute that the Sixth Amendment itself was never violated goes to show why the per se rule itself is unworkable. Mr. Nowak, as you can imagine, sitting here month after month, we hear a lot of drama at times. And Mr. Ackerman certainly wasn't short on drama in his presentation. But wasn't it drama that was more than just for effect but also speaks the truth? As I think about this, if you pull ten people off the street and say that in this particular case there was no harm done to Hernandez, but I want to tell you one other fact, and that fact is that his attorney also represented at one time the potential victim in this case. Just out on the street. Don't you think the overwhelming reaction would be Mr. Ackerman's reaction? That just doesn't sound fair. And what about the integrity of the system? Maybe the federal courts should look to what this state does in per se conflicts if this would not be something that could be addressed under the actual conflict rule. So we're speaking a lot on the facts of this case. Certainly that's what we look at. But what about the overall system? Is the integrity of the system put at issue in a case like this, regardless if prejudice can be proved, and that's what per se conflict is all about, is that on trial here as well? No, Your Honor. Here, when informed of the facts of this case, given the fact that this representation was effectively over years earlier and certainly there was no contemporaneous relationship, Your Honors, this court has already held that there has to be a contemporaneous relationship. If before Mr. Cepeda fled, for instance, Mr. de Leon had officially withdrawn as his counsel, there would be no dispute here that there was no per se conflict. Yet under your hypothetical, the facts under your hypothetical don't change. If you say that he represented the potential victim of this case years earlier and you don't tell them whether he was still technically his lawyer or wasn't technically his lawyer, the public's perception may remain unchanged. But certainly under the law of this court, that would make a difference. If he had officially withdrawn years before. The only difference in your hypothetical and mine is that everybody would be aware in your hypothetical. Everybody would be aware that there was that potential. It was taken before the judge. That fact could certainly be elicited somewhere along the line that a judge looked at this, allowed the person to withdraw, thought that there wasn't any. In this case, it's under the cloak of night. No one knows. So there is a little bit of a difference, isn't there? There is, Your Honors, but only in the fact of what would have happened if he had withdrawn or not. Here, given the fact that if you also inform the public that of the advocacy and the strong defense that Mr. De Leon put on on behalf of Mr. Hernandez in this case, the public would be assuaged, they would be soothed, they would be happy to know that there is such a vigorous and compelling defense bar here, that regardless of whether this prior technically ongoing but long dormant relationship with this potential victim had no adverse effect on what Mr. De Leon did to defend this defendant. He filed motions to suppress his statements. He filed a motion to suppress the audio statements. And moreover, Your Honors, again, he put on the defendant and elicited his testimony about his fear of Mr. Cepeda. He put on a host of witnesses to corroborate that story of why Mr. Cepeda feared Mr. Cepeda, why Mr. Hernandez feared Mr. Cepeda. He based it on the defenses of compulsion and necessity. Once the public hears all of those facts and hears that there was such a vigorous defense despite this prior representation, the public will be soothed and pleased to know at the level of defense that this defendant received in this case and the fact that there was no question that there was no adverse effect in this case, Your Honors. Thank you, Commissioner Miller. Thank you, Your Honors. And for the reasons stated in our brief and those we've stated here today, we ask this Court to affirm the defendant's convictions. Thank you, Your Honors. Rebuttal, Mr. Eckerman. If I may have a few moments. Justice Garmon, in Morales or Ortega, they are both 0-4 decisions where you authored rather insightful opinions on this very subject. And either in one or the other, as pointed out in my reply brief, you told the motivated reader that the public has an interest in all of this. And you mentioned it four times in the sake of two paragraphs toward the end of your opinion. Now, Justice Kilbride disagreed with your analysis and suggested that if we're going to change something, we ought to make it simple. Let's have it all conflict of interest, whether it's per se, actual, potential. And in that way, the Circuit Court judge would necessarily be advised by the prosecution and or defense. And my opponent mentions Morales. Morales came before this Court because the prosecutor sought disqualification of defense counsel because of the conflict. Justice Fitzgerald, you asked a question about whether the prosecutor knew and had a duty. The prosecutor authored the list of witnesses, which appears as an appendix to the PLA APP 29, and they included Mr. Cepeda. Now, it's not harmonious with the record for my opponent to suggest that the prosecutor didn't know and didn't have a duty. Of course, he knew. Of course, he wrote the list of witnesses, which included Cepeda. Ergo, he had a duty. It's just that simple. And regarding... I'm sorry, I've just failed to understand my opponent's position regarding Mickens versus Taylor, particularly when four of the justices violently disagreed with Justice Scalia's majority opinion. It is not adoptable. There is no reason, and I know in recent terms of court, stare decisis has been considered and at times rejected because of a more enlightened view of whatever the subject matter. This is not that case, and this is not those circumstances. And I thank the Chief Justice for suggesting my presentation was dramatic. It's rather humble, but it's honest. And I thank you for your time. And I'm dressed nice today. Thank you, Mr. Ackerman. Thank you. Thank you, Mr. Nowak. Case number 105-368, People of the State of Illinois versus Juan C. Hernandez, is taken under advisement as agenda number seven.